## UNITED STATES v. WESTERN & A. R. R.

(District Court, N. D. Georgia. April 10, 1924.)

No. 597.

1. **Railroads** ⊚⟹229—**Strike no excuse for use of cars out of repair.**

In a suit for penalty for using cars with defective safety appliances, it is no defense that, by reason of a strike and state of violence approaching war, inspection and repair of cars was impossible.

2. **Constitutional law** ⊚⟹297—**Eminent domain** ⊚⟹2(8)—**Railroads** ⊚⟹229— **Statute imposing penalty for using cars out of repair held valid.**

A statute imposing penalties on railroads using cars with defective safety appliances does not take property for public use without compensation, nor deprive a carrier of its property without due process of law.

3. **Commerce** ⊚⟹1—**Regulations by Congress under commerce clause comparable to exercise of police power.**

The regulations by Congress, properly made under the commerce clause of the Constitution, are comparable to the exercise of the police power by the states.

4. **Constitutional law** ⊚⟹241—**Statute imposing penalty for using defective cars not denial of equal protection.**

The statute imposing a penalty on a railroad corporation for using cars with defective safety appliances is not invalid, as denying equal protection of law, by penalizing the corporation, and not servants who should have inspected and repaired cars.

5. **Searches and seizures** ⊚⟹7—**Inspection of railroad cars held not unreasonable.**

Inspection of cars by inspectors on the premises of a railroad without invitation or permission is not a violation of Const. Amend. 4, relating to unreasonable searches; inspection being made to determine whether safety appliances were in proper repair, under Act March 2, 1893, § 6 (Comp. St. § 8610), and Act May 27, 1908, § 1, no paper or property having been seized, and no house or even private place having been entered.

At Law. Suit for penalties, by the United States against the Western & Atlantic Railroad. On demurrer to answer. Portions of answer stricken.

⊚⟹For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Clint W. Hager, U. S. Atty., and John W. Henley, Asst. U. S. Atty., both of Atlanta, Ga.

Tye, Peeples & Tye, of Atlanta, Ga., for defendant.

SIBLEY, District Judge. The suit is for penalties incurred in using three cars with defective safety appliances on August 8, 1922. The amended answer, which is demurred to, sets up with great detail that the shopmen's strike in July and August, 1922, had wholly deprived the defendant of the power either to inspect or to repair fully its cars, and that it was forced either to use some cars out of repair, but not dangerously so, or cease to run its trains, which would have stopped the mails, and caused suffering and perhaps death to very many persons dependent for food on the transportation; that the strike was nation-wide and an unlawful conspiracy against interstate commerce, accompanied with violence that amounted to a state of war, and rendered it impossible to inspect and repair cars as required by law, with the result that the disrepair was directly caused by the unlawful strike; and that Congress did not intend the act to apply in such a situation.

[1] It is possible that Congress did not contemplate such a situation as that described. Whether, if it had, an exception would have been provided, is a matter of speculation upon which the courts may not enter. The enactment made has but one exception in its sweeping requirements, viz. the hauling of a car which was originally properly equipped, but became defective while in use by the carrier, to the nearest available place for repair. The duty to equip the cars as required, and to refrain from using them when not so equipped, has been repeatedly declared by the Supreme Court to be an absolute one; no question of diligence being involved, and no precautions considered as equivalents being allowed. St. Louis, Iron Mountain & S. Ry. Co. v. Taylor, 210 U. S. 281, 28 Sup. Ct. 616, 52 L. Ed. 1061; Chicago, Burlington & Quincy R. Co. v. United States, 220 U. S. 559, 31 Sup. Ct. 612, 55 L. Ed. 582; Louisville & Jeffersonville Bridge Co. v. United States, 249 U. S. 534, 539, 39 Sup. Ct. 355, 63 L. Ed. 757. A strike is not an excuse. United States v. Northern Pacific R. Co. (C. C. A.) 293, Fed. 657, 660. And a state of violence approaching to war neither suspends the statute nor changes its terms. Whatever the cause that prevents the making of repairs, the carrier must cease to use the cars, though its trains stop, or must suffer the consequences fixed by law. If under the unusual circumstances the penalties incurred by the letter of the law ought not to be exacted, the executive probably has the power to remit them under the provisions of Revised Statutes, § 5292 (Comp. St. § 10130). The carrier must seek a remedy there.

[2] The answer avers that the statute, thus rigidly construed, takes the carrier's property without due process of law, in that a penalty is imposed for the acts of others over whom it has no control, and without the possibility by any diligence or effort on its part to escape. Had the penalty been inflicted for the possession of a defective car, since defects will arise with use, or may be occasioned by the unlawful act of others, there would be force in the contention; but the

penalty is laid only on a *use* of the car, and that may be avoided. The very agents of the carrier who use it may, by diligence, inspect it, and. are under duty to lay it aside if it be defective.

[3] The statute does take from the carrier the use of the car temporarily until it can be repaired, but this is only another case of requiring uncompensated obedience to a regulation made for the public good, which is not a taking of property for public use without compensation, nor a deprivation of it without due process of law. The regulations by Congress, properly made under the commerce clause of the Constitution, are comparable to the exercise of the police power by the states, spoken of in Atlantic Coast Line Co. v. Goldsboro, 232 U. S. 548, 34 Sup. Ct. 364, 58 L. Ed. 721. ·

[4] Yet again it is urged that, in that the corporation carrier is penalized, but its servants, who should have inspected and repaired, are not, there is not. equal protection of the law. Congress thought the enforcement of the law could be best secured by dealing with the carrier alone, leaving it to him to locate the agent or employee who might be at fault and to discipline him. If an employee willfully or negligently causes his master loss, contrary to his duty, the master is not without recourse. It is not perceived that Congress has done an unconstitutional thing in looking to the carrier rather than trying to pursue also the agents through whom the carrier acts.

[5] The answer sets up that the information furnished by the Interstate Commerce Commission, upon which the suit purports to be brought, was gotten by its inspectors by an unconstitutional search, in that they went, without invitation or permission, on the premises of the defendant, with no purpose to secure the repair of defective appliances, but only to procure evidence on which to prosecute for penalties, and after discovering the defects did not report them to the defendant, but only to the Commission. Motion is made to have delivered up their ·memoranda, and to suppress the information thus obtained, on ·the principles stated in Amos v. United States, 255 U. S. 313, 41 Sup. Ct. 266, 65 L. Ed. 654, and Gouled v. United States, 255 U. S. 298, 41 Sup. Ct. 261, 65 L. Ed. 647. That such inspectors are under no obligation to report to the carrier defects discovered has been ruled in Chesapeake & Ohio Railroad v. United States, 249 Fed. 805, 808, 162 C. C. A. 39; Chicago, Burlington & Quincy Railroad v. United States, 211 Fed. 12, 127 C. C. A. 438; Norfolk & Western R. Co. v. United States, 191 Fed. 302, 112 C. C. A. 46. If it is thought that a general observance of the law can best be secured by having the carrier to rely wholly on his own inspections, and by secretly and unexpectedly checking results from time to time without information to the carrier, no illegality is perceived in that method. It is not stated that the inspectors entered any office or private place of the defendant. Its "premises" may mean only that they went upon the open tracks, where the cars are used, and looked at them. This is not a search forbidden by the Fourth Amendment of the Constitution, which declares the right of the people to be secure in their persons, houses, papers, and effects against unreasonable search.

The stockholders of the defendant, notwithstanding their incorporation, are still a part of the protected people, and within the amend-

ment. Hale v. Henkel, 201 U. S. 43, 76, 26 Sup. Ct. 370, 50 L. Ed. 652; Silverthorne Lumber Co. v. United States, 251 U. S. 385, 392, 40 Sup. Ct. 182, 64 L. Ed. 319. But a search is not made merely by looking at that which is open to view. There is implied that the object searched for has been hidden, or intentionally put out of the way. There must be some privacy violated. Houses, papers, and effects are to be protected, but an open space of land may be traversed and examined by officers without a warrant, without violation of the Constitution. If an examination of cars on the open track be a search, it is certainly not an unreasonable one. The law has required that certain equipment be on cars, in order to prevent injuries to employees and others, and has devolved enforcement on public officials. See Act March 2, 1893, § 6, 27 Stat. 532 (Comp. St. § 8610). Surely it is more reasonable to see from time to time if the required precautions are being observed than to wait for violations to be disclosed by an injury having occurred. To this end inspectors are provided. Act May 27, 1908, § 1, 35 Stat. 324, 325. No paper or property has been here seized, no house or even private place has been entered; no unlawfulness appears in the obtaining of the information. The motion to suppress it will be denied.

The portions of the answer above discussed will be stricken.