## CHESAPEAKE & O. RY. CO. v. UNITED STATES.

(Circuit Court of Appeals, Fourth Circuit. September 14, 1915.)

### No. 1323.

1. RAILROADS ⊂⊃229—SAFETY APPLIANCE ACT—KNOWLEDGE OF DEFECT.

Safety Appliance Act March 2, 1893, c. 196, 27 Stat. 531 (Comp. St. 1913, §§ 8605–8612), making it unlawful for any carrier to haul or permit to be hauled or used on its line any car, used in moving interstate traffic, not equipped with couplers coupling automatically by impact, and the amendment thereto by Act April 14, 1910, c. 160, § 4, 36 Stat. 299 (Comp. St. 1913, § 8621), which permits such a car to be hauled from the place where its equipment was first discovered to be defective to the nearest available point where it can be repaired, applies to movements of cars with defective couplers in commercial service, although the carrier was ignorant of the defect.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. § 743; Dec. Dig. ⊂⊃229.

Duty of railroad companies to furnish safe appliances, see note to Felton v. Bullard, 37 C. C. A. 8.]

2. RAILROADS ⊂⊃229—SAFETY APPLIANCE ACT.

The Safety Appliance Act, as modified by an order of the Interstate Commerce Commission, requiring that any train operated with power or train brakes shall have such brakes used and operated on not less than 85 per cent. of the cars composing the train, applies to the hauling of a train or a "drag" of cars in transfer service.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. § 743; Dec. Dig. ⊂⊃229.]

In Error to the District Court of the United States for the Eastern District of Virginia, at Richmond; Edmund Waddill, Judge.

Action by the United States against the Chesapeake & Ohio Railway Company. To the judgment rendered, both parties bring cross-writs of error. Affirmed in part, reversed in part, and remanded.

David H. Leake, of Richmond, Va. (Walter Leake, of Richmond, Va., on the brief), for plaintiff in error and cross-defendant in error.

---

⊂⊃For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Hiram M. Smith, Asst. U. S. Atty., of Richmond, Va., and Philip J. Doherty, Sp. Asst. U. S. Atty., of Washington, D. C. (Richard H. Mann, U. S. Atty., of Petersburg, Va., on the brief), for the United States.

Before KNAPP and WOODS, Circuit Judges, and CONNOR, District Judge.

KNAPP, Circuit Judge. The United States sued the Chesapeake & Ohio Railway Company to recover penalties for alleged violations of the safety appliance laws. The declaration contains two counts, charging the defendant (1) with hauling in and about the city of Richmond, Va., on September 23, 1913, a car with coupling apparatus in such defective condition that the car could not be coupled automatically by impact; and (2) with hauling in and about the city of Richmond, on September 25, 1913, a train of cars in transfer service without having the required percentage of cars operated with the power or train brake system.

[1] In support of the first count the testimony of the government's inspectors was to the effect that they examined the car in question in the Second Street yard of defendant, and found that the clevis, which connects the uncoupling lever with the lock block of the coupler, had been broken; that the broken parts were rusty, and appeared to have been broken "for some length of time"; that the car in this condition could not be coupled or uncoupled without a man's going between the cars; that shortly afterwards the car was cut loose from another, a brakeman going between them for that purpose, and shifted to the scale track in the same yard; that a few minutes later this car, with several others, was hauled from the Second Street yard, over the main line of defendant, down to and through the Ninth Street yard, to a private siding about two squares beyond, where it was placed for unloading; that they discovered nothing else out of order with that end of the car; that when the car was moved from the Second Street yard it did not show any defect in the draft rigging that would permit the coupler to pull out far enough to break the clevis; that the defect of a broken clevis is easily repaired by using a piece of wire or other appliance to make the connection, or by putting in a new clevis; and that the defect in question could have been so repaired at any place without taking the car to a repair shop.

Upon this testimony the government requested the following instruction:

"The court charges that, if you believe from the evidence that the Chesapeake & Ohio car No. 22387 was moved from the Second Street yard to Forbes track (the place where it was unloaded) by the defendant company, and that when the said car was thus moved the clevis on the B end of the said car was broken so that the coupling on the said car could not be uncoupled without the necessity of a man's going between the ends of the cars, and that the movement aforesaid was not for the purpose of repairing the said car, then you must find for the United States on the first count of the declaration in this case."

The refusal of this instruction, and the instruction actually given, to which exception was taken, present the questions to be determined.

The evidence on behalf of defendant tended to show that the conductor of the train which brought the car to Richmond on the 21st of September—the car being then placed in the Fulton yard—observed no defects in the coupling apparatus while the car was in his charge; that defendant's inspectors at the Fulton yard examined the cars of that train on the same day, and found nothing out of order with the coupling apparatus or draft rigging of the car in question; that the yard conductor, who had charge of shifting the car from Fulton yard to the Second Street yard, discovered no defects of the kind mentioned; that the company had no inspector at the Second Street yard; that its inspectors at the Ninth Street yard examined the car on the 23d of September at Forbes siding, where it was placed that day for unloading, as above stated, and found the draft rigging out of order and the lift lever defective, so that the car would not couple automatically by impact; that the car, when unloaded, was shifted to another siding near by, where it remained for a couple of days, when it was moved back through the Ninth Street and Second Street yards to the Fulton yard for repairs; and that this was the nearest point at which the needed repairs could be made, as there were no facilities at either of the other yards named.

In view of this evidence the defendant contended, and the trial court charged the jury in substance, that if the car was inspected at the Fulton yard and found in good order, and from there transferred to the Second Street yard and thence to Forbes siding, where it was discovered by defendant's inspectors to be in a defective condition, and if the car was not thereafter moved, except to be taken to the company's shops for repairs, and such movement was necessary, because it was impracticable to make the needed repairs at the place where the defects were discovered, then the defendant was not liable for hauling the car in that condition, notwithstanding the fact that between the time it reached the Second Street yard and the time it was placed on Forbes siding the government's inspectors may have observed a defect in the car which the company's inspectors discovered at the latter point. Thus instructed, the jury found for the defendant on the first count of the declaration.

To sustain these rulings and the resulting verdict in its favor the defendant relies upon an amendment to the Safety Appliance Act, approved April 14, 1910, which reads as follows:

"Provided, that where any car shall have been properly equipped, as provided in this act and the other acts mentioned herein, and such equipment shall have become defective or insecure while such car was being used by such carrier upon its line of railroad, such car may be hauled from the place where such equipment was first discovered to be defective or insecure to the nearest available point where such car can be repaired, without liability for the penalties imposed by section four of this act, * * * if such movement is necessary to make such repairs and such repairs cannot be made except at such repair point."

The original Safety Appliance Act, the pertinent provision of which has remained unchanged, makes it unlawful—

"for any such common carrier to haul or permit to be hauled or used on its line any car used in moving interstate traffic not equipped with couplers

coupling automatically by impact, and which can be uncoupled without the necessity of men going between the ends of the cars."

That the duty thus imposed is absolute and unconditional has been put beyond question by repeated decisions. St. L., I. M. & S. Ry. Co. v. Taylor, 210 U. S. 281, 28 Sup. Ct. 616, 52 L. Ed. 1061; C., B. & Q. Ry. Co. v. United States, 220 U. S. 559, 31 Sup. Ct. 612, 55 L. Ed. 582; Delk v. St. L. & S. F. R. Co., 220 U. S. 580; 31 Sup. Ct. 617, 55 L. Ed. 590. The performance of this duty is not excused by the exercise of reasonable care. United States v. Southern Pacific Co., 169 Fed. 407, 94 C. C. A. 629. The degree of diligence required by the statute is of the highest order, and any failure to comply therewith must necessarily subject the railroad company to the penalty prescribed. Atlantic Coast Line R. Co. v. United States, 168 Fed. 175, 94 C. C. A. 35. Whether a defendant carrier knew its cars were out of order or not is immaterial; its duty was to know they were in order and kept in order at all times. C., B. & Q. Ry. Co. v. United States, 170 Fed. 556, 95 C. C. A. 642. It is no defense, to an action against a railroad company for using cars on which the couplers were so out of order as to necessitate men going between the cars, that the company used due diligence to keep the couplers in good repair. Wabash R. Co. v. United States, 172 Fed. 864, 97 C. C. A. 284.

Without multiplying citations, it is sufficient to say that the original act as construed by the courts made the carrier liable for any and every movement on its line, in interstate commerce, of a car whose coupling apparatus was out of order. Under no circumstances could such a car be hauled or used without violating the statute; and the penalty was incurred, when a car was moved in a defective condition, even if the carrier had been vigilant to discover the defect and was actually unaware of its existence. Indeed, it was the severity of this absolute prohibition, which did not exempt the necessary movement to a repair shop, that led to the remedial amendment above quoted. But the relief thereby granted is limited by its express terms and manifest intent, and there is no warrant for its further extension. It permits the transfer without penalty of a disabled car to "the nearest available point" where it can be repaired, provided such transfer is necessary because the defects cannot be remedied at the point where they are first discovered, and that is the only movement which does not subject the carrier to liability.

We are therefore of opinion that the amendment fails to furnish a defense to the cause of action here considered. For the purposes of this case it may be assumed that the defendant was not liable, under the amended law, for hauling the car in question from Forbes siding, where its employés discovered the defects to which they testified, to the repair track in Fulton yard, where the car was put in order. But the movement of which the government complains, and in respect of which the refused instruction was requested, was the movement two days before from the Second Street yard to the place of unloading, and it is not pretended that the car was then moved for the purpose of repairs, or in any other than commercial service. This

being so, if the coupling apparatus was out of order and unworkable when that movement occurred, the defendant was liable, although ignorant of the defects, and the amendment affords no protection. C., B. & Q. R. Co. v. United States, 211 Fed. 12, 127 C. C. A. 438; United States v. T. & B. V. Ry. Co., 211 Fed. 448, 128 C. C. A. 120. In these recent cases, which involved facts of marked similarity to those now under review, the same conclusion is reached as to the positive duty imposed by the statute and the limited scope of the amendment. Without repeating the argument, we are constrained to hold that the government was entitled to the requested instruction, and that its refusal was reversible error.

[2] The undisputed facts upon which the second count of the declaration is based are briefly as follows: The defendant, on the date above named, moved a train or "drag" of 55 cars from the Fulton yard in Richmond, over the main line of its railway, to the Albemarle paper plant, a distance of about two miles. In making this movement the automatic brakes were coupled up and in use only on the first 12 cars of the train, but not coupled up and used on the other 43 cars. This operation was what is known as a "transfer"; that is, the movement of a considerable number of cars coupled together from the Fulton yard, where trains were broken up, to the Second Street yard, where they were sorted out for delivery to other yards and sidings in the city. The cars so associated for this purpose are called a "drag," as no caboose is attached and the cars are hauled by a transfer engine.

At the time this movement took place the Safety Appliance Law, as modified by an authorized order of the Interstate Commerce Commission, required that any train operated with power or train brakes should have such brakes used and operated on not less than 85 per cent. of the cars composing such train, which concededly was not done in this instance. The defendant, however, contended that this requirement did not apply to the hauling of a train or "drag" of cars in transfer service, and therefore the facts shown did not charge it with liability. The trial court overruled this contention, and the jury under instructions found a verdict for the government. The correctness of this ruling has lately, and since this case was argued, been fully upheld by two decisions of the Supreme Court. United States v. Erie Railroad Co., 237 U. S. 402, 35 Sup. Ct. 621, 59 L. Ed. 1019, and United States v. Chicago, Burlington & Quincy Railroad Co., 237 U. S. 410, 35 Sup. Ct. 634, 59 L. Ed. 1023, rendered in May, 1915. The case at bar is clearly covered by these decisions, and the question involved is no longer open to discussion.

It follows that the judgment in favor of the defendant upon the first count of the declaration must be reversed, and the case remanded for further proceedings upon that count in accordance with this opinion. The judgment in favor of the government upon the second count is affirmed.