BALTIMORE & O. S. W. R. CO. v. UNITED STATES.

(Circuit Court of Appeals, Sixth Circuit. May 18, 1917.)

No. 2959.

1. RAILROADS ⬤229—EQUIPMENT OF TRAINS—HAULING CARS FOR REPAIRS.
Under Act April 14, 1910, c. 160, § 4, 36 Stat. 299 (Comp. St. 1916, § 8621), providing that any carrier subject thereto, using, hauling, or permitting to be used or hauled, on its line, any car subject thereto, and not equipped as provided thereby, shall be liable to a specified penalty, provided that where any car shall have been properly equipped, and such equipment shall have become defective or insecure while such car was being used by such carrier upon its line of railroad, it may be hauled from the place where the equipment was first discovered to be defective or insecure to the nearest available point for repairs, if such movement is necessary to make such repairs, the fact that a car being hauled for repairs is hauled in connection with cars in commercial use does not take such movement of the car out of the proviso.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. § 743.]

2. STATUTES ⬤228—CONSTRUCTION—PROVISOS.
The general rule of statutory construction is that a proviso carves special exceptions only out of a general enacting clause, and that those

who set up any such exception must establish it as being within the words as well as the reason thereof.

[Ed. Note.—For other cases, see Statutes, Cent. Dig. § 310.]

**3.** RAILROADS ☞229—EQUIPMENT OF TRAINS—HAULING CARS FOR REPAIRS.

The hauling of a car having a drawbar of less than the standard height to a point where such defective equipment may be repaired is not within the proviso of Act April 14, 1910, § 4, if the car was improperly equipped before being put in use; the proviso only applying if the car was properly equipped in the first instance and the equipment became defective while being used.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. § 743.]

**4.** RAILROADS ☞229—EQUIPMENT OF TRAINS—HAULING CARS FOR REPAIRS—"SUCH CARRIER."

The hauling of a car having a drawbar of less than the standard height to a point where it can be repaired is not within the proviso of Act April 14, 1910, § 4, unless the equipment became defective while being used by the carrier so hauling it, and the proviso does not apply where the carrier hauling it received the car from a connecting carrier with defective equipment, since "such carrier" is not necessarily to be referred, according to strict grammatical construction, to the last antecedent, namely, "any common carrier subject to the act," when the meaning of the clause would thereby be impaired, but plainly relates to the carrier hauling the defective car for repairs.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. § 743.]

**5.** RAILROADS ☞229—CONNECTING CARRIERS—DUTY TO RECEIVE CARS.

No duty rests upon a carrier to accept from a connecting line a car equipped in violation of Safety Appliance Act March 2, 1893, c. 196, 27 Stat. 531 (Comp. St. 1916, §§ 8605–8612), as supplemented by Act April 14, 1910.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. § 743.]

**6.** RAILROADS ☞229—EQUIPMENT OF TRAINS—HAULING CARS FOR REPAIRS.

Where a car with defective equipment is received by a railroad from a connecting carrier in a string or train of cars, the mere incidental handling of such car by the receiving carrier refusing to accept it, in such manner as may be necessary to disconnect it from the other cars for redelivery to the connecting carrier, and to proceed with the use of the other cars, is not a hauling of such defective car by the receiving carrier, which would subject it to the penalties of Act April 14, 1910, § 4.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. § 743.]

In Error to the District Court of the United States for the Western Division of the Southern District of Ohio; Howard C. Hollister, Judge.

Action for statutory penalties by the United States against the Baltimore & Ohio Southwestern Railroad Company. Judgment for the United States, and defendant brings error. Affirmed.

George Hoadly, of Cincinnati, Ohio, for plaintiff in error.

Philip J. Doherty, Sp. Asst. U. S. Atty., of Washington, D. C., for the United States.

Before WARRINGTON and DENISON, Circuit Judges, and SANFORD, District Judge.

SANFORD, District Judge. This action was brought by the United States to recover from the Railroad Company penalties for alleged

violations of the Federal Safety Appliance Acts. The defendant answered the first cause of action alleged in the petition. A demurrer to this answer was sustained; and, the defendant not desiring to plead further, judgment was rendered against it for the statutory penalty, with costs; which judgment it now seeks to review under its writ of error.

The single question presented is whether, as a matter of law, the answer set forth a valid defense to the cause of action alleged.

The petition alleged that the defendant, a common carrier engaged in interstate commerce by railroad, had, on November 11, 1915, hauled over its line, as part of a train engaged in the movement of interstate traffic, a freight car having a draw-bar of less than the standard height.

The answer alleged that the defendant received this car on its line from a connecting line of railroad; that immediately on receipt thereof, and before it was moved or hauled, the defendant's inspectors discovered it to be defective; that at the place where it was discovered to be defective the defendant had no facilities for repairing, and it was impossible to repair it; and that thereupon the defendant hauled it to its shop, the nearest place at which it could be repaired; and that this was the same hauling which was alleged as the cause of action.

As this defective car was not being hauled alone, but in a train in connection with cars commercially used, such movement of the car, though for the purpose of repair merely, would clearly have created absolute liability for the statutory penalty under sections 5 and 6 of the original Safety Appliance Act of March 2, 1893, c. 196, 27 St. 531 (Comp. St. 1916, §§ 8609, 8610), as amended by section 1 of the Act of March 2, 1903, c. 976, 32 St. 943 (Comp. St. 1916, § 8613). See Great Northern Railway v. Otos, 239 U. S. 349, 351, 36 Sup. Ct. 124, 60 L. Ed. 322; Southern Railway v. Snyder (6th Circ.) 187 Fed. 492, 497, 109 C. C. A. 344; Erie Railroad v. United States (6th Circ.) 240 Fed. 29, 31; and Chesapeake Railway v. United States (4th Circ.) 226 Fed. 683, 686, 141 C. C. A. 439.

The defendant, however, contends that the hauling of this car to the nearest available repair point under the circumstances set forth in its answer, brings such movement within the proviso of section 4 of the Supplemental Act of April 14, 1910, c. 160, 36 St. 298, and thereby relieves it from liability.

Section 4 of this Act, which supplements the Act of March 2, 1893, as amended by the Acts of April 1, 1896, and March 2, 1903, provides:

"That any common carrier subject to this Act using, hauling, or permitting to be used or hauled on its line, any car subject to the requirements of this Act not equipped as provided in this Act, shall be liable to a penalty of one hundred dollars for each and every such violation: * * * Provided, That where any car shall have been properly equipped, as provided in this Act and the other Acts mentioned herein, and such equipment shall have become defective or insecure while such car was being used by such carrier upon its line of railroad, such car may be hauled from the place where such equipment was first discovered to be defective or insecure to the nearest

available point where such car can be repaired, without liability for the penalties imposed * * * if such movement is necessary to make such repairs and such repairs can not be made except at such repair point; * * * and nothing in this proviso shall be construed to permit the hauling of defective cars by means of chains instead of draw bars, in revenue trains or in association with other cars that are commercially used. * * *"

Section 5 of this supplemental Act further provides:

"That except that, within the limits specified in the preceding section of this Act, the movement of a car with defective or insecure equipment may be made without incurring the penalty provided by the statutes, but shall in all other respects be unlawful, nothing in this Act shall be held or construed to relieve any common carrier" from any of the provisions, liabilities or requirements of the Act of 1893, as amended by the Acts of 1896 and 1903; "and, except as aforesaid," all of the provisions, requirements and liabilities of said Act of 1893, as so amended, "shall apply to this Act."

[1] The fact that this car was being hauled for repair in connection with cars in commercial use, does not, as heretofore held by this court, take such movement out of the proviso of the Act of 1910, if otherwise coming within its terms. Erie Railroad v. United States (6th Circ.) 240 Fed. supra, at page 32.

[2] We are of opinion, however, that the movement shown in the answer is, for other reasons, not within the terms of the proviso. The general rule of statutory construction is that a proviso carves special exceptions only out of a general enacting clause; and that those who set up any such exception must establish it as being within the words as well as the reason thereof. United States v. Dickson, 15 Pet. 141, 165, 10 L. Ed. 689; Ryan v. Carter, 93 U. S. 78, 83, 23 L. Ed. 807; Schlemmer v. Buffalo Railway, 205 U. S. 1, 10, 27 Sup. Ct. 407, 51 L. Ed. 681; United States v. Trinity Railway (5th Circ.) 211 Fed. 448, 453, 128 C. C. A. 120. Thus it has been held that as the proviso in question relates in terms only to the movement of a car for repair after it has been discovered to be defective, it does not relieve the carrier from liability for hauling a defective car before the defect has been discovered. Chicago Railroad v. United States (8th Circ.) 211 Fed. 12, 15, 127 C. C. A. 438; United States v. Trinity Railway (5th Circ.) 211 Fed. supra, at page 452, 128 C. C. A. 120; Chesapeake Railway v. United States (4th Circ.) 226 Fed. supra, at page 686, 141 C. C. A. 439; United States v. Chesapeake Railway (D. C.) 242 Fed. 161, per Cochran, J., Safety Appliance Decisions, No. 2980. Furthermore, section 5 of the Act of 1910 provides, "with unmistakable iteration," that, except within the limits specified in section 4, the movement of a car with defective equipment "shall in all other respects be unlawful." See Great Northern Railway v. Otos, 239 U. S. supra, at page 352, 36 Sup. Ct. 124, 60 L. Ed. 322.

The defendant's answer does not bring the movement of the car in question within the exception contained in the proviso of section 4 of the Act of 1910, in two respects:

[3] 1. It does not aver that the car had been properly equipped with a standard draw-bar in the first instance, and that such equipment had become defective while being used; and for aught that appears, the car may have been improperly equipped with a defective

draw-bar before being put in use. Plainly, however, under the specific language of the proviso, the privilege of hauling a defective car for repairs is only granted when the car had, in the first instance, been properly equipped and thereafter became defective while being used. United States v. Trinity Railway (5th Circ.) 211 Fed. supra, at page 452, 128 C. C. A. 120.

[4] 2. The answer does not aver that the equipment of the car had become defective while it was being used by the defendant upon its line of road; and, on the contrary, it is reasonably inferable from the answer that, even if it had been previously properly equipped, it had become defective before being delivered to the defendant by the connecting line of railroad, since it is averred that it was discovered to be defective immediately upon its receipt from such connecting line of railroad and before it had been used or hauled by the defendant.

Section 4 of the Act of 1910 provides, as above shown, that any common carrier subject to the Act, using or hauling any car subject to its requirements, not equipped as provided, shall be liable to a penalty; provided, that where any car shall have been properly equipped, as provided, "and such equipment shall become defective or insecure while such car was being used by such carrier upon its line of railroad," such car may be hauled for repairs from the place where such equipment was first discovered to be defective to the nearest available repair point, without penalty.

We are of opinion that the necessary effect of the clause, "and such equipment shall have become defective or insecure while such car is being used by such carrier upon its line of railroad," as used in this proviso, is to limit the right of hauling a defective car for repairs, without penalty, to the carrier upon whose line of railroad the car was being used when the equipment became defective. This was the construction given in United States v. Trinity Railroad (5th Circ.) 211 Fed. supra, at page 452, 128 C. C. A. 120, in which it was incidentally said that the defendant could not bring itself under the proviso unless the evidence showed, among other things, that the car "became defective while being used on the line of railroad of defendant." And in this connection it is to be noted that in Erie Railroad v. United States (6th Circ.) 240 Fed. supra, at page 30, it was specifically pointed out, in a foot-note to the opinion, that the record "did not require the conclusion that the cars had become defective before they came to be used by defendant on its line." The relative phrase "such carrier," as used in this clause, is not necessarily to be referred, as the defendant insists, according to strict grammatical construction, to the last antecedent, namely, any common carrier subject to the Act, when the meaning of the clause would thereby be impaired. Summerman v. Knowles, 33 N. J. Law, 202, 205. And when this phrase is read in the light of the entire context, we are of opinion that it plainly relates to the carrier hauling the defective car for repairs; and that hence, under the express limitation contained in this clause, a defective car can not be hauled for repairs, without liability for the statutory penalty, except by the carrier upon whose line it became defective while

being used. This construction is not only required by the language of the proviso, but is in strict harmony with the reason and purpose of the Safety Appliance Acts, and the intention of Congress, emphatically expressed in section 5 of the Act, that all movements of defective cars not specified in the proviso of section 4 shall be unlawful. The effect of such construction is undoubtedly to prohibit a carrier from hauling for repairs over its own line a defective car which has been delivered by a connecting carrier in interchange; and to avoid liability for hauling on its own lines a defective car thus received, it becomes necessary, as a practical matter, for a carrier to which a car subject to the provisions of the Safety Appliance Act has been delivered by a connecting carrier, to inspect it at the interchange point before accepting it, and if found to be defective, to refuse to accept it from the connecting carrier or to use or haul it upon its own line for the purpose of repairs or otherwise. Such construction, emphasizing the necessity for vigilant examination of cars at interchange points and placing the responsibility for repairs upon the carrier upon whose line they became defective, is, as we view it, in its tendency to prevent the interchange of defective cars, in direct furtherance of the remedial and humanitarian purposes of the Safety Appliance Acts. Pennsylvania Co. v. United States (6th Circ.) 241 Fed. 824, —— C. C. A. ——, May 8, 1917; Gray v. Louisville Railroad (D. C.) 197 Fed. 874, 876.

[5] We find nothing either in the Safety Appliance Acts or in any rule of the common law, which requires a carrier to accept from a connecting line a car equipped in violation of the Safety Appliance Act; and we are of opinion that it is both the right and duty of a carrier to refuse to accept such defective car in interchange when such acceptance would necessarily involve its own use of such car in violation of these Acts. Clearly no contrary inference can be drawn, by necessary implication from the provision of section 3 of the Act of March 2, 1893, authorizing a carrier to refuse to receive from a connecting line cars not equipped sufficiently with such power or hand brakes as would work with the brakes in use on its own cars; this being a right which the carrier would not otherwise have had, as the Act did not prohibit ipso facto the use of such cars, but merely the running of a train not containing a sufficient number of cars equipped with power or train brakes to enable the engineer to control its speed.

[6] We add that, in our opinion, in case a defective car is received from a connecting carrier in a string or train of cars, the mere incidental handling of such car by the receiving carrier, refusing to accept it, in such manner as may be necessary to disconnect it from the other cars for redelivery to the connecting carrier and to proceed with the use of the other cars, would not be a use or hauling of such defective car by the receiving carrier which would subject it to the penalties of the Act; such incidental handling of the car not being in contravention of the purposes of the Act, but a necessary step in furtherance thereof.

For these reasons, as the defendant's answer did not aver that the car in question had been properly equipped in the first instance and had

become defective while in use on the defendant's line of railroad, we conclude that it did not state a valid defense to the first cause of action alleged in the petition; that hence the court below properly sustained the demurrer thereto and rendered judgment against the defendant upon such cause of action; and its judgment will accordingly be affirmed.