CHESAPEAKE & O. RY. CO. v. UNITED STATES (two cases).

(Circuit Court of Appeals, Sixth Circuit. April 5, 1918.)

Nos. 3063, 3064.

1. RAILROADS ⬉229—SAFETY APPLIANCE ACT—CONSTRUCTION.

The Safety Appliance Act (Act March 2, 1893, c. 196, 27 Stat. 531 [Comp. St. 1916, §§ 8605–8612]), as originally passed, being remedial and humanitarian in its purpose, should be broadly construed.

2. RAILROADS ⬉229—SAFETY APPLIANCE ACT—PENALTY.

Safety Appliance Act March 2, 1893, as amended by Act April 14, 1910, c. 160, 36 Stat. 298 (Comp. St. 1916, § 8617 et seq.), which provides that a car properly equipped, which has become defective or insecure while in use, may be hauled from the place where such equipment was discovered to be defective, or insecure, to the nearest available point where such car can be repaired without liability for the penalties imposed, does not permit a railroad company to move without penalty from one point to another a defective car not known to be defective, and which is not so moved for the purpose of repair, although in fact it is hauled to the nearest available point for repair.

3. RAILROADS ⬉229—SAFETY APPLIANCE ACT—DUTY OF GOVERNMENT INSPECTORS.

Where government inspectors discover the defective condition of cars, they are not bound to report that fact to the railroad company, that the defects may be remedied before the cars are moved.

In Error to the District Court of the United States for the Eastern District of Kentucky; Andrew M. J. Cochran, Judge.

Two actions by the United States of America against the Chesapeake & Ohio Railway Company. There were judgments for plaintiff, demurrers being sustained to the answers (242 Fed. 161), and defendant brings error. Affirmed.

John Galvin and Maurice L. Galvin, both of Cincinnati, Ohio, for plaintiff in error.

Thomas D. Slattery, U. S. Atty., of Covington, Ky., and Philip J. Doherty, Sp. Asst. U. S. Atty., of Washington, D. C.

Before KNAPPEN and DENISON, Circuit Judges, and SATER, District Judge.

⬉For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

SATER, District Judge. These cases were brought by the United States to recover from the railway company, as defendant, penalties for alleged violations of the Safety Appliance Act of March 2, 1893 (27 Stat. 531), as amended April 14, 1910 (36 Stat. 298, 299).

The defendant, an interstate carrier, at the times mentioned in the pleadings maintained yards, car inspectors, and repair men at Silver Grove, Ky., but not at Covington, which is an intermediate point between Silver Grove and the defendant's western terminus at Cincinnati, Ohio. On arrival of defendant's west-bound freight trains at Silver Grove, they are taken in charge and broken up by the yard men. The cars are inspected and, if need be, repaired, and are then delivered to the proper connecting lines at Cincinnati. The cars received from such connecting lines are inspected before they are received, and are thence transported by the yard men across the Ohio river, through Covington, to Silver Grove, some 10 miles distant, where they are placed in the appropriate east-bound trains. Government inspectors discovered that certain east-bound cars received by the defendant from connecting carriers at Cincinnati were each on their arrival at Covington in bad order as to some portion or portions of their safety appliances, and that certain west-bound cars coming from the Silver Grove yards were each on their arrival in Covington likewise defective. The discovery thus made was not communicated to the defendant, whose yard men moved the east-bound cars in their defective condition to Silver Grove and the west-bound cars in like condition to Cincinnati. On account of the transportation of such cars from Covington these suits were brought, the recovery sought in each count of each petition being $100.

The defendant, as to all of the counts here involved, answered that it made no inspections at Covington and had no inspectors, repair men, or facilities for making repairs at that place, and that, "as to most, if not all, of said cars," the defects of which complaint was made were found on the arrival of such cars at Silver Grove or Cincinnati, as the case might be, and on discovery were repaired, and that those places were the first at which the repairs could be made after the defects occurred and were detected. The defendant further alleged that, when the west-bound cars left its yards at Silver Grove and the east-bound cars left the terminals at Cincinnati, the safety appliances on each were in a safe and proper condition, and that, if they were in fact defective, as charged, when examined by the government inspectors in Covington, the defects arose after they started on their journeys from Silver Grove and Cincinnati, respectively, and could not have been discovered and corrected, as regards the west-bound cars, until they arrived at Cincinnati, or, as to the east-bound cars, until they reached the yards at Silver Grove. A demurrer, which admitted all well-pleaded facts, was sustained to the answer in each case, and, as the defendant did not wish to plead further, judgment was entered against it by Judge Cochran, whose opinion is found in 242 Fed. 161. A reversal of both judgments is sought.

Although some of the defects in the cars were confessedly slight, and it would seem, were susceptible of prompt repair at almost any

point on the defendant's line as soon as discovered, if defendant's trains were ordinarily equipped to meet such situations, and although the answers are with much show of reason assailed as faulty on the ground that an excusing averment in each is alleged in the contingent or hypothetical, and not in the issuable, form (6 Ency. Pl. & Pr. 270; Suit v. Woodhall, 116 Mass. 547), we shall consider the cases as presented by the defendant on its own liberal and favorable construction of its pleadings. The situation, then, is this:

The defendant's cars were in good order when they were started on their journey from Silver Grove and Cincinnati, respectively, but became in disrepair while in transit to Covington. The defendant transported such cars over its line without inspection, and in ignorance of their defects, from Covington, Ky., to the nearest station, where the defects were discovered by it and repaired. It maintains that under any reasonable interpretation of the law it committed no offense and cannot be penalized, and seeks refuge under section 4 of the amendment of April 14, 1910, to the Safety Appliance Act (Comp. St. 1916, § 8621), which amendment, in so far as germane, is as follows:

"That any common carrier subject to this act, using, hauling, or permitting to be used or hauled on its line, any car subject to the requirements of this act not equipped as provided in this act, shall be liable to a penalty of one hundred dollars for each and every such violation: * * * Provided, that where any car shall have been properly equipped, as provided in this act and the other acts mentioned herein, and such equipment shall have become defective or insecure while such car was being used by such carrier upon its line of railroad, such car may be hauled from the place where such equipment was first discovered to be defective or insecure to the nearest available point where such car can be repaired, without liability for the penalties imposed * * * if such movement is necessary to make such repairs and such repairs cannot be made except at such repair point."

The defendant contends that the discovery mentioned in the proviso of the amendment means the occurrence of the defect, that the defect must be held to have been discovered as soon as it arose, and that, if a defect occurs while a car is in transit, the car, if it cannot be forthwith repaired, may be transported to the nearest available repair point without offending the law and incurring its penalty. This contention is stoutly combated by the government.

[1, 2] The Safety Appliance Act as originally passed, being remedial and humanitarian in its purpose, is broadly construed, and in clear and unequivocal language imposes on the defendant, as it did on all other interstate railroads, the absolute and unqualified duty of maintaining the safety appliances on its cars in a secure condition. By its provisions movement on its line, in interstate commerce, of a car with a defective appliance subjected the defendant to a penalty; and this was so, even if it had been vigilant to discover the defect and was actually ignorant of its existence. It being the purpose of the act to produce the highest degree of care in the inspection of cars for the protection of the lives and limbs of employés, knowledge of defects, diligence in detecting them, and wrong intent in transporting cars with defective appliances, were not made ingredients of the acts condemned. Chicago, B. & Q. Ry. v. United States, 220 U. S. 559,

569, 570, 31 Sup. Ct. 612, 55 L. Ed. 582. To relax somewhat the rigid rule prescribed by the original act, which did not exempt the necessary movement to a point where repairs could be made, the amendment of April 14, 1910, was enacted. Although the amendment measureably grants relief to and enlarges the right of interstate railroads, it nevertheless is limited by its express terms and manifest intent, and its further extension is unwarranted. It only permits the hauling, without penalty, of a car which becomes defective while the car is in use by the carrier on its line of railroad, to the nearest available point where such car can be repaired (if such movement is necessary to make repairs) after the defect has been discovered. Any other hauling of such a car, and consequently a hauling of it before its bad order condition is discovered, although the carrier be without fault in not making the discovery, is a violation of the statute. This interpretation of the amendment accords with that of Judge Knapp in C. & O. Ry. Co. v. United States, 226 Fed. 683, 686, 141 C. C. A. 439 (C. C. A. 4), in which he held that:

"It permits the transfer without penalty of a disabled car to 'the nearest available point' where it can be repaired, provided such transfer is necessary because the defects cannot be remedied at the point where they are first discovered, and that is the only movement which does not subject the carrier to liability."

A like conclusion was reached in Chicago, B. & Q. R. Co. v. United States, 211 Fed. 12, 15, 127 C. C. A. 438 (C. C. A. 8), and United States v. Trinity & B. V. Ry. Co., 211 Fed. 448, 128 C. C. A. 120 (C. C. A. 5), and was forecast by this court in Pennsylvania Co. v. United States, 241 Fed. 824, 827, 154 C. C. A. 526, and Baltimore & O. S. W. R. Co. v. United States, 242 Fed. 420, 423, 155 C. C. A. 196.

[3] The proviso contained in the amendment of 1910 and ingrafted on the preceding enactment takes no case out of such enactment which does not fall fairly within the proviso's terms; and the defendant, in its reliance on the exception so carved out, was required to bring itself within both its language and reason. United States v. Dickson, 15 Pet. 141, 165, 10 L. Ed. 689; Baltimore & O. S. W. R. Co. v. United States, 242 Fed. 421, 423, 155 C. C. A. 196 (C. C. A. 6). The defendant has not so brought itself within the exception, in that its transportation of the cars mentioned in the petition occurred not after, but before, it discovered their defects. It may be added that no duty rested on the government inspectors, when they discovered the defective condition of the cars at Covington, to report that fact to defendant's employés that the defects might be remedied before the cars were moved. Chicago, B. & Q. R. Co. v. United States, 211 Fed. at page 15, 127 C. C. A. 438.

It follows that the judgment rendered in the District Court must be affirmed; and it is so ordered.