### UNITED STATES v. NORTHERN PAC. RY. CO.

(Circuit Court of Appeals, Ninth Circuit. March 12, 1923.)

No. 3909.

1. **Railroads ⚖═229—Hauling defective logging cars held not authorized by Safety Appliance Act.**

The proviso to Safety Appliance Act April 14, 1910, § 4 (Comp. St. § 8621), providing that, when a properly equipped car becomes defective while in use on its line, a railroad company, if necessary for its repair, may haul it to the nearest available point for repair, *held* not to apply to cars which became defective while in use on a connecting logging road, not operated by the company.

2. **Railroads ⚖═229—Ignorance of defects will not relieve from liability under Safety Appliance Act.**

The duty imposed on a railroad company by the Safety Appliance Act (Comp. St. § 8605 et seq.) is a positive duty, and the exercise of reasonable care will not excuse violation, nor will ignorance of defects relieve from liability.

3. **Railroads ⚖═229—Hauling defective logging cars in trains held violation of Safety Appliance Act.**

Where defendant railroad company furnished cars for loading to a logging company, which operated a logging road several miles long into

---

⚖═For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

the woods, and in loading such cars the handholds were damaged and rendered defective, the receiving and hauling of such cars in their defective condition, with their loads, to their destination in its trains, *held* a violation of Safety Appliance Act March 2, 1893, § 4 (Comp. St. § 8608), though such destination was the nearest point at which defendant kept a repair force, as contemplated by the proviso to Act April 14, 1910, § 4 (Comp. St. § 8621).

4. **Railroads ⚖229—Logging roads held connecting lines, within Safety Appliance Act.**

Logging railroads, connecting with the tracks of an interstate carrier, but operated by different companies and extending several miles into the woods, though not common carriers, are not merely industry or spur tracks of the carrier, but are equivalent to connecting lines, for the purposes of the Safety Appliance Act (Comp. St. § 8605 et seq.).

In Error to the District Court of the United States for the Southern Division of the Western District of Washington; Edward E. Cushman, Judge.

Action by the United States against the Northern Pacific Railway Company. Judgment for defendant, and plaintiff brings error. Reversed and remanded.

Thomas P. Revelle, U. S. Atty., of Seattle, Wash., W. W. Mount, Asst. U. S. Atty., of Tacoma, Wash., and Stacy H. Myers, Sp. Asst. U. S. Atty., of Washington, D. C.

Geo. T. Reid, of Seattle, Wash., and J. W. Quick, of Tacoma, Wash., for defendant in error.

Before GILBERT and HUNT, Circuit Judges, and WOLVERTON, District Judge.

WOLVERTON, District Judge. This is an action instituted by the United States against the Northern Pacific Railway Company to recover prescribed penalties, under the Safety Appliance Act and its amendments (Comp. St. § 8605 et seq.), for violations thereof. Eight counts are embraced by the complaint. Six counts were disposed of, respecting which no appeal has been taken. Counts 7 and 8 were submitted to the court, upon an agreed statement of facts, without the intervention of a jury, resulting in judgment for the defendant, from which judgment plaintiff is prosecuting writ of error for reversal thereof.

The stipulated facts, in so far as it is necessary to state them, are as follows:

Defendant was and is a common carrier, engaged in interstate commerce by railroad. The stations of Aloha and Copalis, which are non-agency stations, are located, the former 24 miles, and the latter 16 miles, north of Hoquiam, Wash. At Aloha, the Hill Logging Company, engaged exclusively in logging timber off owned or leased lands, and not a common carrier, has trackage connection with defendant's line. Like conditions exist at Copalis in respect to the Neff-Merrill Logging Company. The logging roads extend back into the timber a considerable distance from the railroad of the defendant. The defendant delivers its logging cars to the logging companies at the respective con-

⚖For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

nections. The cars are then taken by the logging companies over their logging roads, by means of their own engines or motive power, into the timber, where they are loaded with logs. They are then returned by the logging companies, in the same manner, to the connections, where, thus loaded, they are picked up by defendant's train crew, operating its local freight trains over its line of road, and hauled in such trains to Hoquiam, Wash.

The logging companies do not have or maintain repair men or facilities for repairing cars that may become damaged while in their possession, and the defendant maintains no repair men or facilities for repairing cars at either Aloha or Copalis, or at any other place on its line of road nearer than Hoquiam.

Defendant, prior to October 25, 1921, delivered car No. 62891, in good condition and containing none of the defects complained of in the seventh cause of action, to the Hill Logging Company, at Aloha, which car was taken by that company over its line of road and loaded with logs. In the process of loading, the handhold on the right-hand side of the "B" end of the car became damaged, as alleged. In such damaged condition, the car was returned to the defendant at Aloha station, and was, on October 25th, picked up by its train crew, placed in its local freight train, and hauled to Hoquiam, where the defect was repaired. Like facts are stipulated respecting car No. 61559, which was delivered by defendant to the Neff-Merrill Logging Company at Copalis for transportation into the timber, loading and return to that station, where it was picked up by defendant, and carried to Hoquiam.

"That the damages to the two cars above mentioned are such as can be and are only repaired by repair men, and the train crews have no facilities for making such repairs and are not experienced in that class of work, and that the first repair point for the purpose of making such repairs, and that the only repair point on this branch of defendant's railroad where repair men and repair facilities are maintained, is at the city of Hoquiam."

By stipulation of counsel, the only question presented is whether the trial court erred in holding, as it necessarily held in rendering its judgment, that the receipt of the cars by the Northern Pacific Railway Company, in their damaged condition, from the logging roads, where they had been damaged while being loaded with logs, and as set forth in the agreed statement of facts, was not a violation of the Safety Appliance Act.

[1] It is clear that the defendant does not bring itself within the proviso of section 4 of the Act of April 14, 1910 (36 Stat. 298 [Comp. St. § 8621]), supplementary to the Safety Appliance Act. The relevant excerpts of the proviso read as follows:

"Provided, that where any car shall have been properly equipped, as provided in this act and the other acts mentioned herein, and such equipment shall have become defective or insecure while such car was being used by such carrier upon its line of railroad, such car may be hauled from the place where such equipment was first discovered to be defective or insecure to the nearest available point where such car can be repaired, * * * if such movement is necessary to make such repairs and such repairs cannot be made except at such repair point."

For interpretation, let the proviso be read in connection with the following excerpt from section 5 (Comp. St. § 8622):

"Within the limits specified in the preceding section of this act, the move-ment of a car with defective or insecure equipment may be made without in-curring the penalty provided by the statutes, but shall in all other respects be unlawful."

It is not shown that the cars became defective or insecure while they were being used by the carrier on its line of railroad. Indeed, the con-trary appears—that they became out of repair while in the hands of the logging companies. Nor does the stipulation of facts definitely indicate the place where the equipment was first discovered to be de-fective or insecure. The facts do show that the cars were picked up at the respective stations by defendant's train crew and placed in the local freight; but it does not appear that the defective condition of the cars was discovered before reaching Hoquiam. Nor does it appear that the cars in their defective condition were being hauled for repair. The proviso, it must be observed, permits of hauling cars, in defective and insecure condition, only from the place of discovery of their con-dition to the nearest available point for repair. In Chesapeake & O. Ry. Co. v. United States, 249 Fed. 805, 162 C. C. A. 39, the court says:

"Although the amendment measurably grants relief to and enlarges the right of interstate railroads, it nevertheless is limited by its express terms and manifest intent, and its further extension is unwarranted. It only permits the hauling, without penalty, of a car which becomes defective while the car is in use by the carrier on its line of railroad, to the nearest available point where such car can be repaired (if such movement is necessary to make re-pairs) after the defect has been discovered."

To like effect, see United States v. Trinity & B. V. Ry. Co., 211 Fed. 448, 128 C. C. A. 120, Chesapeake & O. Ry. Co. v. United States, 226 Fed. 683, 141 C. C. A. 439, and Baltimore & O. S. W. R. Co. v. United States, 242 Fed. 420, 155 C. C. A. 196.

The effect of section 5 is to declare that all movements of defective cars not specified in the proviso of section 4 shall be unlawful. Balti-more & O. S. W. R. Co. v. United States, supra, 242 Fed. 425, 155 C. C. A. 196.

[2] Railroad carriers, in hauling cars with defective appliances, must do so at the peril of incurring the penalties referable thereto under the Safety Appliance Acts. The exercise of reasonable care will not ex-cuse, nor will ignorance of defects relieve against the liability. C., B. & Q. Ry. v. United States, 220 U. S. 559, 31 Sup. Ct. 612, 55 L. Ed. 582; United States v. Trinity & B. V. Ry. Co., supra. In the latter case, it is said (at 211 Fed. 452, 128 C. C. A. 124):

"The duty to have and maintain in good order the safety appliances required is a positive duty imposed on the carrier by the statute."

So it was said in Chesapeake & O. Ry. Co. v. United States, 249 Fed. 805, supra, at page 808, 162 C. C. A. 39, at page 42, after making the declaration as heretofore quoted from that case:

"Any other hauling of such a car, and consequently a hauling of it before its bad order condition is discovered, although the carrier be without fault in not making the discovery, is a violation of the statute."

See, also, Chesapeake & O. Ry. Co. v. United States, 226 Fed. at page 686, 141 C. C. A. 439.

[3] So that, whether the defendant knew or did not know that it was carrying cars with defective appliances in its train, not having brought itself within the purview of the proviso of section 4, it would be liable for the penalty imposed. The circumstance that the cars were taken from the logging companies in their damaged condition cannot change the result. The fact remains that they were carried on the defendant's line of road in the defective condition. That, without else, unless the defendant has conformed to the mandate of the proviso—which it has not—renders it liable.

[4] So, coming to the especial error presented respecting the receipt of the cars in their defective condition from the logging companies, we do not regard the logging roads as nothing more than industry tracks, occupying the same position as a spur-track connection which serves a stone quarry, factory, or other industry along the line of a railway, as counsel for defendant contend.

These logging roads, as the stipulation shows, extend back for a considerable distance into the timber, and the defective condition of the cars arose while they were in the timber and being used by the logging companies. The liability of cars becoming damaged and their appliances defective is peculiarly incident to use on logging roads. The use of the cars is intrusted to corporations distinct from the interstate carrier. The case does not present the condition where the carrier on the main line shunts its cars out upon a spur track leading to a quarry, factory, or other industry upon the line of railway, and takes them back into its trains for carriage to some other point. It is more nearly one where the carrier receives cars from a connecting line of another company, to be carried on their way to some other point. That the connecting lines are not common carriers can make no difference.

The fact remains that an interstate carrier receives into its trains, from other lines of road, cars with defective appliances, and carries them in its trains in that condition, a thing which the law condemns. In such case, it is the duty of the interstate carrier to inspect the cars before receiving them into and hauling them in its trains, and, if found defective, to refuse so to haul them. Baltimore & O. S. W. R. Co. v. United States, supra. Or, we presume, in a case where there are no means for repairing the cars at the junction of the roads, they may be hauled, without being taken into freight trains or used therein, and thus moved, in what are termed hospital trains, to a convenient place for repair. Denver & R. G. R. Co. v. United States, 249 Fed. 822, 162 C. C. A. 56.

In view of the humanitarian purpose with which the Safety Appliance Act was adopted, and the broad construction to which it is entitled, for serving its purpose, we can arrive at but one conclusion.

The judgment will be reversed as to the seventh and eighth counts, and the case remanded.