**UNITED STATES of America,**
**Plaintiff,**

v.

**DENVER & RIO GRANDE WESTERN**
**RAILROAD COMPANY, Defendant.**

No. C-51-59.

United States District Court
D. Utah,
Central Division.
July 11, 1959.

A. Pratt Kesler, U. S. Atty., for Dist. of Utah, William J. Adams, Asst. U. S. Atty., Salt Lake City, Utah, for plaintiff.

Grant Macfarlane, Jr. (of Van Cott, Bagley, Cornwall & McCarthy), Salt Lake City, Utah, for defendant.

CHRISTENSON, District Judge.

The Government seeks enforcement of the statutory penalty against the defendant railroad company for allegedly hauling or using on its line a car which was out of repair or not properly equipped, relying upon 45 U.S.C.A. § 13 and other provisions of the Safety Appliance Acts referred to therein. 45 U.S.C.A. §§ 1 to 16, inclusive. The case has been submitted for decision upon an agreed statement of facts. Union Pacific Railroad Company on February 25, 1959, acting on its own behalf and not on behalf of the defendant Denver & Rio Grande Western Railroad Company, delivered a cut of fifty-two cars, including D. & R. G. W. R. R. Co. hopper car 18160, to a live track in defendant's Roper Yard in Salt Lake City, Utah. This car at the time of such delivery was actually out of repair to such an extent that its condition was not in accordance with the Safety Appliance Acts. Upon discovery of the defective condition by Denver & Rio Grande Western inspectors, the car was "bad ordered", disconnected from the other cars, taken out of service, and switched to the repair track in Roper Yard where presumably it was repaired by the defendant. This movement from the live track to the repair track for the purpose indicated gave rise to the Government's claims herein. It was impractical and dangerous, although I infer not impossible, to repair the car where it was left by Union Pacific on the live track. The defendant's union contract provides that if cars delivered by Union Pacific were returned from Roper to the Union Pacific yards, it was necessary for Denver & Rio Grande Western switchmen to return them with a Denver & Rio Grande Western switch engine. The Union Pacific yards are about five miles distant from the Roper Yard, so that if the car had been rejected by the defendant it would have to be moved by someone back to the Union Pacific yard. There are other stipulated facts which I include by reference in my findings of fact along with the foregoing, but those stated here seem to control the decision.

Title 45 U.S.C.A. § 13 provides as follows:

"Any common carrier subject to sections 11–16 of this title using, hauling, or permitting to be used or hauled on its line, any car subject to the requirements of said sections not equipped as provided in said sections, shall be liable to a penalty of $250 for each and every such violation, to be recovered as provided in section 6 of this title: *Provided*, That where any car shall have been properly equipped, as provided in sections 1–16 of this title, and such equipment shall have become defective or insecure while such car was being used by such carrier upon its line of railroad, such car may be hauled from the place where such equipment was first discovered to be defective or insecure to the nearest available point where such car can be repaired, without liability for the penalties imposed by this section or section 6 of this title, if such movement is necessary to make such repairs and such repairs cannot be

made except at such repair point; and such movement or hauling of such car shall be at the sole risk of the carrier, and nothing in this section shall be construed to relieve such carrier from liability in any remedial action for the death or injury of any railroad employee caused to such employee by reason of or in connection with the movement or hauling of such car with equipment which is defective or insecure or which is not maintained in accordance with the requirements of sections 1–16 of this title; and nothing in this proviso shall be construed to permit the hauling of defective cars by means of chains instead of drawbars, in revenue trains or in association with other cars that are commercially used, unless such defective cars contain livestock or 'perishable' freight. As amended Aug. 14, 1957, Pub.L. 85–135, § 1(2), 71 Stat. 352."

Defendant in effect concedes that its movement of the car between its live line to the repair line did not come within the terms of the proviso, since it had not become defective or insecure while being used by it upon its own line of railroad; but it seeks to avoid the operation of the statute by the contention that, apart from the exception stated, the prohibition does not apply where the actual movement was solely for the purpose of repair and not for commercial purposes, or as a part of interstate commerce.

The defendant's contention finds support in the earlier decisions. As I read them it would not have been unlawful for a carrier in defendant's position to move a defective car empty from the point of delivery to the nearest repair facility so long as the hauling was for the special purposes of necessary repair and not for some other commercial purpose or in connection with the movement of cars for other purposes. Chicago, R. I. & P. R. Co. v. Wright, 239 U.S. 548, 36 S.Ct. 185, 60 L.Ed. 431; United States v. Rio Grande Western Ry. Co., 8 Cir., 1909, 174 F. 399; Southern Ry. Co. v. Snyder,

6 Cir., 1911, 187 F. 492; United States v. Northern Pac. Ry. Co., 9 Cir., 1923, 287 F. 780; Baltimore & O. S. W. R. Co. v. United States, 6 Cir., 1917, 242 F. 420; Chicago & N. W. Ry. Co. v. United States, 8 Cir., 1909, 168 F. 236, 21 L.R.A.,N.S., 690.

Sections 1 through 7 of the Safety Appliance Acts were adopted by Act of March 2, 1893, c. 196, 27 Stat. 531. Sections 8 through 10 were adopted by Act of March 2, 1903, c. 976, 32 Stat. 943. Sections 11 through 16 were adopted by Act of April 14, 1910, c. 160, 36 Stat. 298. Before the 1910 Act, the language of the Safety Appliance Acts made no express provision for the movement of defective cars for purposes of repair. Section 4 of the 1910 Act added what is now Section 13 of Title 45 U.S.C.A. hereinabove quoted. It appears very clearly that the amendment took cognizance of prior judicial decisions for in its proviso it dealt with the limited conditions under which movements could be made for the purposes of repair and in the last clause of the amendment it provided that chained cars could not be moved even for repair under the circumstances referred to in the proviso if they were part of revenue trains or in association with cars commercially used. The decisions prior to the 1910 amendment read into the general prohibition an exception turning upon whether cars were moved exclusively for the purpose of repair or whether they were part of a "commercial movement". Thus, Congress covered the subject matter of these decisions and while some other courts continued to follow the old Eighth Circuit rule without reference to the amendment, the Eighth Circuit itself took notice of, and rather strictly applied the amendment, in a case arising in Utah involving another point. Denver & R. G. R. Co. v. United States, 8 Cir., 1918, 249 F. 822.

In other words, the 1910 amendment, after an implied exception had been established by court decisions, specified exactly the circumstances which Congress desired to exclude from the operation of the Acts. To permit hauling

for repair the equipment had to become defective or insecure while such car was being used upon its line of railroad by the carrier (making the repair). In the present case this was not the case, but the car became defective prior to its delivery to the defendant. I concur with the reasoning of Alabama Great Southern R. Co. v. United States, 5 Cir., 1956, 233 F.2d 520, which concludes:

"That court-created exception having been delimited and narrowed by Congress in this and other respects, it does not now lie within the rightful power of the courts, in effect to create another exception * * *." At page 526.

See also United States v. Atchison, T. & S. F. Ry. Co., 9 Cir., 1946, 156 F.2d 457; compare United States v. Louisville & Jeffersonville Bridge & R. Co., 6 Cir., 1924, 1 F.2d 646.

 The defendant's action does not come within the exception provided by Congress. Congress has expressly provided when the general prohibition shall not apply. The general prohibition is clearly applicable. It would be the duty of the Court to apply it even though, as suggested by defendant, its application would work great hardship or present to the defendant a difficult situation without justification as far as the accomplishment of the purposes of the law is concerned. It is not for the Court to weigh congressional wisdom in this respect, as the power of Congress to pass the acts is beyond question. But were it the duty of the Court to consider whether the application of the Act as here construed would advance its legitimate purposes, it would have to be recognized that the placing upon the defendant in this case of the duty to reject the car because of its defective condition when delivered rather than to accept it and itself assume the duty of moving it to its own repair facilities, would lend emphasis and give point to the importance of each carrier's assuming the duties incumbent upon it at the appropriate time and without avoiding, dividing or passing on its responsibilities for assumption by others. In this sense, the exclusion from the exception would have purposeful merit. It seems enough, however, that the intent of Congress is clear not to exempt from the operation of the Act the hauling by the defendant of the car which was defective when received by it and which did not become defective when it was in use by the defendant.

██ To the further suggestion by defendant that because its agreement with the union would make difficult compliance with the act, it seems sufficient to say that the prohibition may not be frustrated by private agreement.

The stipulation of the parties as incorporated herein by reference being deemed sufficient as findings of fact, and the foregoing opinion being considered the Court's conclusions of law, the clerk of court is hereby directed to enter judgment against the defendant and in favor of the plaintiff for the statutory penalty of $250, together with costs. A stay of thirty days for the execution of the judgment is granted.