## SOUTHERN PAC. CO. v. UNITED STATES.

Circuit Court of Appeals, Eighth Circuit.
December 5, 1927.

No. 7893.

1. **Railroads** ⬅229(5)—**Interstate Commerce Commission inspectors held not required to notify train crew of defective coupler (Safety Appliance Act 1893, as amended [45 USCA § 1 et seq.]).**

Interstate Commerce Commission inspectors, who found that coupler was defective within Safety Appliance Act of March 2, 1893, as amended by Act April 1, 1896, Act March 2, 1903, and Act April 14, 1910 (45 USCA § 1 et seq., Comp. St. § 8605 et seq.), *held* to have no duty to notify train crew.

2. **Railroads** ⬅229(5)—**Carrier held properly penalized for defective coupler, not found as soon as defect occurred, but immediately repaired when found (Safety Appliance Act 1910, § 4 [45 USCA § 13]).**

Under Safety Appliance Act April 14, 1910, § 4 (45 USCA § 13; Comp. St. § 8621), and in view of the construction of Act March 2, 1893, § 2 (45 USCA § 2; Comp. St. § 8606), Act April 1, 1896, amending section 6 of Act of 1893 (45 USCA § 6; Comp. St. § 8610), and Act March 2, 1903 (45 USCA §§ 8–10; Comp. St. §§ 8613–8615), carrier must discover defective coupler as soon as it occurs at its peril, and was properly assessed penalty, even though defect was repaired immediately after being discovered, notwithstanding that 1910 amendment relieved carrier of penalty during necessary movement of car to place for repair after discovery of defective appliance.

In Error to the District Court of the United States for the District of New Mexico; Colin Neblett, Judge.

Action by the United States against the Southern Pacific Company. Judgment for plaintiff, and defendant brings error. Affirmed.

E. R. Wright, of Santa Fé, N. M. (Guy V. Shoup, of San Francisco, Cal., and Del W. Harrington, of El Paso, Tex., on the brief), for plaintiff in error.

H. S. Bowman, Asst. U. S. Atty., of Santa Fé, N. M. (John W. Wilson, U. S. Atty., of Albuquerque, N. M., and M. C. List, Sp. Asst. U. S. Atty., of Washington, D. C., on the brief), for the United States.

Before LEWIS, Circuit Judge, and POLLOCK and SCOTT, District Judges.

SCOTT, District Judge. This action was brought by the United States against the Southern Pacific Company in the District Court of the United States for the District of New Mexico, under the act of Congress known as the Safety Appliance Act, approved March 2, 1893, as amended by the acts approved April 1, 1896, March 2, 1903, and April 14, 1910 (45 USCA § 1 et seq.; Comp. St. § 8605 et seq.), to recover the penalty therein provided. Briefly stated, the violation complained of is that the defendant is a common carrier engaged in interstate commerce by railroad in the state of New Mexico, and that it hauled its car B. I. G. X. tank No. 109, over a part of a highway of interstate commerce, viz. over its line of railroad from Duran, N. M., toward Tucumcari, in said state, when the coupling and uncoupling apparatus on the B end of said car was out of repair and inoperative; the uncoupling lever being disconnected from lock lift of coupler, thus necessitating a man going between the ends of the cars to couple or uncouple them. The defendant answered, pleading substantially the facts later agreed to and found. A jury was waived as provided by law, and the case tried to the court. The facts were stipulated, and the stipulated facts found by the court, and the court as a conclusion of law found that the defendant had violated the Safety Appliance Act and assessed penalty in the sum of $100. The defendant brings the case here on error.

[1] From the record thus made up it appears: That the defendant is a common carrier engaged in interstate commerce in the state of New Mexico, and operates a line of railway from El Paso, Tex., to and through Carrizozo, N. M., to Tucumcari, N. M. That Carrizozo is a division point and freight terminus, where freight cars and tank cars are inspected and repaired. That Tucumcari is a division point and freight terminus 187 miles from Carrizozo, where freight cars and tank cars are inspected and repaired. That Duran, intermediate Carrizozo and Tucumcari, is a division point, but where inspectors and repair facilities are not maintained. That Pastura is intermediate Duran and Tucumcari. That the train and crew in question left Carrizozo early in the morning of October 13, 1926, reached Duran, a distance of 70 miles, where it stopped 11 minutes and changed engines and train crews, and proceeded onward toward Tucumcari. That while the train was stopped at Duran it was inspected by two Interstate Commerce Commission inspectors and the defect described found to exist. That the inspectors did not notify the train crew. It was not their duty to do so. Chicago, B. & Q. Ry. Co. v. United States (C. C. A.) 211 F. 12. When the train reached Pastura it was delayed, and inspected by the train crew, and a member of the train crew discovered the defect described. Acting under his instructions, "he immediately repaired the defect in

question, taking only a minute or two for such work, and thereafter the car continued its journey in said train to Tucumcari in good condition."

[2] The Safety Appliance Act as originally approved March 2, 1893, in section 2 (45 USCA § 2; Comp. St. § 8606), reads as follows: "That on and after the first day of January, eighteen hundred and ninety-eight, it shall be unlawful for any such common carrier to haul or permit to be hauled or used on its line any car used in moving interstate traffic not equipped with couplers coupling automatically by impact, and which can be uncoupled without the necessity of men going between the ends of the cars."

By the Act of March 2, 1903 (45 USCA §§ 8–10; Comp. St. § 8613–8615), the provisions of the original act were made to apply to all cars used on any railroad engaged in interstate commerce. On April 14, 1910, the act was again amended, and in section 4 (45 USCA § 13; Comp. St. § 8621) appears the following proviso: "Provided, that where any car shall have been properly equipped, as provided in this act and the other acts mentioned herein, and such equipment shall have become defective or insecure while such car was being used by such carrier upon its line of railroad, such car may be hauled from the place where such equipment was first discovered to be defective or insecure to the nearest available point where such car can be repaired, without liability for the penalties imposed, * * * if such movement is necessary to make such repairs and such repairs cannot be made except at such repair point; and such movement or hauling of such car shall be at the sole risk of the carrier, and nothing in this section shall be construed to relieve such carrier from liability in any remedial action for the death or injury of any railroad employee caused to such employee by reason of or in connection with the movement or hauling of such car with equipment which is defective or insecure or which is not maintained in accordance with the requirements of this act and the other acts herein referred to. * * * * "

The act as approved and amended prior to the amendment of 1910 had been repeatedly construed and applied by the courts, including this court and the Supreme Court of the United States. It is conceded by counsel for plaintiff in error that, under the holding in St. Louis Iron Mountain & S. Ry. Co. v. Taylor, 210 U. S. 281, 28 S. Ct. 616, 52 L. Ed. 1061, and C., B. & Q. Ry. v. United States, 220 U. S. 559, 31 S. Ct. 612, 55 L.

Ed. 582, the duty imposed by the act as amended prior to the act of 1910, to maintain safety appliances was absolute. It is pointed out in plaintiff in error's brief that, following the amendment of 1910, the federal courts have construed the proviso in that amendment in the following cases: C., B. & Q. Ry. Co. v. United States (C. C. A.) 211 F. 12; United States v. T. & B. V. Ry. Co. (C. C. A.) 211 F. 448; C. & O. Ry. Co. v. United States (C. C. A.) 226 F. 683; United States v. Chesapeake & Ohio Ry. Co. (D. C.) 242 F. 161; C. & O. Ry. Co. v. United States (C. C. A.) 249 F. 805.

Counsel for plaintiff in error in the brief say: "It is our contention that the cases in 211 F. at page 448 (C. C. A.) 226 F. 683, 242 F. 161 and 249 F. 805, cited supra, were all presented to the court upon an erroneous theory, and that the decision of the Circuit Court of Appeals in each instance was based upon an erroneous defense." Again counsel say: "We do not contend, in the case at bar, that the facts bring the plaintiff in error within the terms of the proviso to section 4." "It is our contention that the Congress of the United States, at the time of the passage of the 1910 act, had in mind the state of the law as it then existed, including the extremely harsh provisions of the original act, which even penalized the railroad company which was required to haul a defective car to a repair point in order to make repairs, and that it was the clear intention of Congress to relax this harsh rule in the original act by the amendment of 1910, so that the carrier would not be subject to penalties in cases where cars, being properly equipped out of the terminal, became defective while handled over the line, and where diligence is used to discover and repair such defects as soon as they occur."

The contention of counsel is ingenious, but we are not prepared to hold it sound. In our opinion, the language of the proviso in the amendment of 1910 falls clearly short of counsel's contention. It is without doubt that the act as it stood prior to the amendment of 1910, and as construed up to that time, made the duty to maintain safety appliances absolute. It is without doubt that Congress had the power, by its act of 1910, to relax the rigor of the original act and to relax it in any degree. It was entirely the province of Congress to draw the line to which relaxation should extend. We are not inclined to hold that such relaxation extended beyond the clear language of the amendment. The proviso of the amendment referred to relaxed the previous rule to the

extent that "such car may be hauled from the place where such equipment was first discovered to be defective or insecure to the nearest available point where such car can be repaired, without liability for the penalties imposed, * * ' * if such movement is necessary to make such repairs and such repairs cannot be made except at such repair point."

Now, of course, plaintiff in error has not brought itself within the language of the proviso, and its counsel admits this, for it was not necessary for any movement to take place in order to repair the car in question. The fact found and stipulated is that, when the defect was discovered, the member of the train crew "immediately repaired the defect in question, taking only a minute or two for such work." But counsel contend that the effect of the proviso, when properly construed, was to modify the rigor of the act, so as to relieve from the penalty, not only in the case specified in the language of the amendment, but reaching back and relieving from the time the defect occurred until it was discovered. Such an interpretation in our opinion would be unreasonable and seriously impair the efficiency of the act. It would place the burden upon the government to show, not only the fact of defective equipment, but that knowledge of the defect had been brought to the carrier, and there would be a few cases where this task would be easy. We think Congress intended the proviso to mean that, in a case where an appliance became defective and was immediately discovered by the carrier, and it was necessary to move the car as in the proviso specified, the carrier would be relieved of the penalty, but that Congress also intended to leave the act in a state so that the carrier must discover the defect as soon as it occurs at its peril.

We think the trial court made no error in its finding, ruling, and judgment and that the judgment should be and is affirmed.